**William H. FELL, III**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2007.
Filed June 8, 2007.

---

Marc A. Werlinsky, King of Prussia and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

Colin M. Jenei, New Hope, for appellee.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

The Department of Transportation, Bureau of Motor Vehicles (DOT), appeals from an order of the Court of Common Pleas of Bucks County (trial court) sustaining the petition for appeal from a suspension of the vehicle registration of William H. Fell, III (Fell). At issue is whether Fell presented clear and convincing evidence that his automobile was insured on May 14, 2005, and continuously thereafter, as required by the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7. The trial court concluded that he had presented such evidence and, so, sustained his appeal.[1]

Fell insured his automobile with the insurance company AIG, through an insurance broker, Heritage One Insurance

---

1. This case was originally submitted to the Court for resolution without argument; however, the case was, thereafter, scheduled for oral argument before the Court en banc by order dated November 15, 2006. The parties, subsequently, were directed to be prepared to address the following issues:

Given the directive found in Section 1786(d)(5) of the Vehicle Code, 75 Pa.C.S. § 1786(d)(5), requiring that an insured/vehicle owner may challenge "[a]n *alleged* lapse, cancellation or termination of a policy of insurance by an insurer ... only ... by requesting review by the Insurance Commissioner" (emphasis added), and

Given the directive found in Section 1786(d)(3) of the Vehicle Code, 75 Pa.C.S. § 1786(d)(3), that an insured/vehicle owner, whose vehicle registration has been suspended because the Department of Transportation has determined that the required financial responsibility has not been secured, shall have the right of appeal under Section 1377 of the Vehicle Code, 75 Pa. C.S. § 1377 (relating to judicial review);

How may these two factual scenarios and two separate remedies be reconciled if an insured/vehicle owner does not receive notice from an insurer alleging that his or her coverage has lapsed, been cancelled, or terminated, prior to or simultaneously with, notice to the Department by an insurer of the insured's/vehicle owner's lapse, cancellation or termination of a policy of insurance?

(Commonwealth Court Order of December 14, 2006.) Consequently, each party filed a supplemental brief, which have been reviewed and considered by this Court.

Agency, Inc. (Heritage). On May 14, 2005, AIG notified DOT that Fell's automobile insurance policy had lapsed for nonpayment. Based on this lapse, on July 14, 2005, DOT sent Fell a notice that his registration for the vehicle was going to be suspended for three months unless he provided documentation that he had insurance coverage. Fell maintains that he first learned of the averred insurance lapse when he received this notice on July 22, 2005. Subsequently, Fell complained to the Insurance Department, which then acknowledged in a letter to Fell dated August 5, 2005, that it was investigating the complaint. However, Fell did not provide DOT with the information requested in its July 14, 2005 notice and, therefore, on August 30, 2005, DOT sent him a letter indicating that his registration was going to be suspended pursuant to 75 Pa.C.S. § 1786(d) for three months,[2] beginning on October 4, 2005. On September 29, 2005, pursuant to 75 Pa.C.S. § 1377(a), Fell appealed the suspension to the trial court.[3]

The trial court conducted a de novo hearing. Both sides offered various documents into evidence and Fell testified on his own behalf.

DOT offered the following documents into evidence in support of its position that Fell's insurance carrier had terminated his insurance: (1) the official notice mailed to Fell on August 30, 2005, regarding the suspension of his vehicle registration; (2) a computer printout of an electronic transmission from AIG certifying the termination of the insurance policy on May 14, 2005; (3) a computer printout of vehicle inquiry detail by title screen from DOT's records for a 2005 Toyota Coupe (Scion) owned by Fell; and (4) a registration record which appears in Fell's DOT file. Fell did not object to the admission of these documents.

Fell testified that in April he received an invoice from AIG and that he submitted a personal check to AIG in April as payment, but that the check was not honored because of insufficient funds in the account on which the check was drawn. Sometime thereafter the check was resubmitted and it cleared, resulting in full payment of the insurance premium to AIG on May 2, 2005. As part of documentary evidence, Fell submitted the cancelled check and a bank statement for the account from which the

---

2. Section 1786(d) provides as follows:
   (d) **Suspension of registration and operating privilege.—**
   (1) The Department of Transportation shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility. The operating privilege shall not be restored until the restoration fee for operating privilege provided by section 1960 (relating to reinstatement of operating privilege or vehicle registration) is paid.
   75 Pa.C.S. § 1786(d).

3. This section provides that:
   (a) **General rule.—**Any person who has been sanctioned by the department under this chapter or whose registration ... has been ... suspended or otherwise sanctioned by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).... The court shall schedule the appeal for hearing upon 30 days' written notice to the department, and thereupon take testimony and examine into the facts of the case and determine whether the petitioner is entitled to registration, subject to suspension of registration or other sanction under the provisions of this title or departmental regulations.
   75 Pa.C.S. § 1377(a).

check was issued, which documented that it cleared on May 2, 2005.

Fell testified that he purchased the Scion on April 29, 2005 and that, on that date, Heritage issued and faxed to him an Endorsement Page that he signed on May 2, 2005. The Endorsement page indicated that it covered the Policy Period 02/25/05 to 08/25/05 and had an "Endorsement Effective Date of 04/29/05" (Trial Court Transcript, February 21, 2006(Tr.) Fell Ex. 6.) The document also indicated that Fell's 1995 "Olds Cut Cie SL" was to be deleted, and the Scion was to be added to the policy. Relatedly, Fell offered into evidence a Pennsylvania Insurance Identification Card, issued by Heritage to Fell on April 29, 2005 (Insurance Card–1), that indicated that he was covered by a policy issued by AIG. The Insurance Card–1 indicated that the policy's effective date was April 29, 2005, and the expiration date was May 29, 2005. (Tr. Fell Ex. 5.)

Following an accident involving the Scion that occurred on May 4, 2005, Fell contacted AIG, who directed him to take his vehicle to an AIG claims center for an evaluation and appraisal. Fell reported to the AIG claims center on May 5, 2005, and received AIG's written appraisal of damages, dated May 5, 2005, in the amount of $223.86.

Fell also introduced a letter from DOT to Fell dated July 14, 2005, indicating that DOT had received notice of the cancellation from AIG, and that it needed verification of coverage. The letter indicated that if he "[c]ontinued insurance with the **same**

company BEFORE OR ON THE SAME DAY your policy was cancelled" that he should "[s]end PENNDOT a **signed** letter, on insurance company letterhead, from either the insurance company's headquarters or your agent, stating the date your policy resumed active coverage. The letter must include the policy number, policy effective and expiration dates and Vehicle Identification Number." (Tr. Fell Ex. 12.) Fell did not introduce any evidence of such a letter from Heritage, his agent, or AIG.

Fell also introduced several other documents that related to various contacts he had with Heritage and AIG in the months following the lapse of coverage. Fell offered into evidence a permanent insurance card (Insurance Card–2) for the vehicle, with the effective date listed as being from February 25, 2005 through August 25, 2005. Fell testified that he received this card in mid-May 2005.[4] Fell also introduced a check issued to AIG and dated July 3, 2005, and a corresponding bank statement indicating that the check was cashed. Fell testified that, prior to receiving the DOT letter dated July 14, 2005, he had received no notification from any source that this policy had lapsed, and that he was not aware that the policy had lapsed.

Fell also entered in evidence the August 3, 2005 letter from the Insurance Department indicating that it was researching his complaint against AIG. Fell did not offer into evidence any further communications he may have received from the Insurance Department.[5]

---

4. Fell testified that to his "best recollection [he received] it ... on or about May 15th [2005]." (Tr. at 31.)

5. In its brief before this Court, DOT attached a letter to Fell, from the Insurance Department, dated September 13, 2005 that discussed the results of the Insurance Department's investigation. The letter indicated

that AIG had provided the Insurance Department with a letter, and accompanying certificate of mailing, that indicated that on April 27, 2005 AIG had mailed to Fell a Notice of Cancellation for Nonpayment of Premium and that the cancellation was to be effective on May 14, 2005.

DOT objected to each of the documents submitted by Fell, but the trial court overruled DOT's objections and admitted all of Fell's documents into evidence. The trial court issued an order sustaining Fell's appeal.

■ In its opinion in support of the order, the trial court found that DOT met its burden under Section 1786(d) of the MVFRL and established a *prima facie* case by production of the electronic transmission from AIG that Fell's automobile insurance had been terminated for nonpayment. The court reasoned that this created the presumption of non-insurance. However, the trial court further found that Fell met his burden of demonstrating that his vehicle was, in fact, insured on May 14, 2005. The trial court did not rely on a specific document that clearly indicated that Fell had maintained coverage, such as a letter from his insurance company, but instead, inferred that the vehicle was covered by insurance on the date in question because of evidence of a continued business relationship between Fell and AIG. The trial court explained:

> In the case *sub judice,* we found overwhelming evidence that Fell possessed continuing, uninterrupted automobile insurance coverage for the entire period from April to August 2005. Fell demonstrated the fact of his insured status on May 14, 2005 by proof that went far beyond "clear and convincing evidence." This Court was persuaded beyond any doubt that Fell's claim was meritorious.

Not only did Fell overcome the presumption of non-insurance by *evidence of AIG's issuance on April 29, 2005 of a Temporary Insurance Card, but also through the continuing insurer/insured business relationship between the parties during the applicable time period.* This relationship included, inter alia, a May 2, 2005 premium payment to AIG, the May 4, 2005 Police Accident Report listing AIG as Fell's insurer, his May 5, 2005 meeting with AIG's adjuster and the resulting appraisal of damages, the signed May 5, 2005 AIG Declaration Page, Fell's May 15, 2005 receipt of AIG's Permanent Insurance Card, the June, 2005 invoice from AIG and premium payment of July 3, 2005.

(Trial Court Op. at 9–10, June 1, 2006 (emphasis added).) Accordingly, the trial court sustained Fell's appeal and directed DOT to rescind the vehicle registration suspension previously imposed. This appeal by DOT followed.[6]

Herein, DOT raised the following issues for our review: (1) whether the trial court's finding, that Fell maintained financial responsibility on his 2005 Scion, is supported by "clear and convincing evidence" of record; and (2) whether the trial court erred and exceeded its scope of review in ruling that the current statutory scheme, which does not include a provision giving the Insurance Commissioner the ability to rescind a vehicle registration suspension imposed under Section 1786(d)(1), is "valueless and no remedy at all."

---

**6.** This Court's review of a trial court order that sustained a statutory appeal from a suspension of registration is limited to determining whether the court committed a reversible error of law, abused its discretion, or made necessary findings of fact that are not supported by substantial evidence. *Fagan v. Department of Transportation, Bureau of Motor Vehicles,* 875 A.2d 1195, 1198 n. 1 (Pa. Cmwlth.2005). When an appeal from a regis-

tration suspension is filed with the trial court, the trial court's "review is limited to examining those facts listed in Section 1786(d)(3)(i) and (ii) [of the Vehicle Code], i.e., whether the registrant's vehicle is registered or is the type of vehicle that must be registered and whether the Department received notice of the termination of insurance coverage." *Id.* at 1198.

The MVFRL requires that "[e]very motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility." 75 Pa.C.S. § 1786(a). The MVFRL requires DOT to suspend a motor vehicle registration for three months if it determines that the vehicle's owner has not obtained legally required insurance for the vehicle. 75 Pa. C.S. 1786(d)(1); *Choff v. Department of Transportation, Bureau of Motor Vehicles,* 861 A.2d 442, 446 (Pa.Cmwlth.2004). Section 1786(d)(3) of the MVFRL, 75 Pa.C.S. § 1786(d)(3),[7] provides that an insured/vehicle owner, whose vehicle registration has been suspended because DOT has determined that the required financial responsibility has not been secured, has the right to appeal that suspension under Section 1377 of the Vehicle Code, 75 Pa.C.S. § 1377, to the applicable court of common pleas.

■ In such an appeal, DOT bears the initial burden of showing that a lapse in the required financial responsibility has occurred. *Com., Department of Transportation, Bureau of Driver Licensing v. Porter,* 157 Pa.Cmwlth. 645, 630 A.2d 945, 946–47 (1993). To do this, DOT must establish: "(1) that the vehicle in question is of a type required to be registered in the Commonwealth; and (2) that the required automobile liability insurance has been cancelled or otherwise terminated." *Id.* at 947; 75 Pa.C.S. § 1786, (d)(3). "DOT may satisfy its burden by certifying that it received documents or electronic transmissions from the insurance company informing DOT that the insurance coverage has been terminated." *Choff,* 861 A.2d at 446; 75 Pa.C.S. 1377(b)(2). Neither party contests the trial court's determination that here, DOT sustained its burden of proof and established its prima facie case.[8]

Once DOT establishes its prima facie burden of proof, a vehicle owner must prove that financial responsibility was continuously maintained on the vehicle as required by Section 1786(a) of the MVFRL,

---

7. This section provides that:

> (3) An owner whose vehicle registration has been suspended under this subsection shall have the same right of appeal under section 1377 (relating to judicial review) as provided for in cases of the suspension of vehicle registration for other purposes. The filing of the appeal shall act as a supersedeas, and the suspension shall not be imposed until determination of the matter as provided in section 1377. The court's scope of review in an appeal from a vehicle registration suspension shall be limited to determining whether:
> (i) the vehicle is registered or of a type that is required to be registered under this title; and
> (ii) there has been either notice to the department of a lapse, termination or cancellation in the financial responsibility coverage as required by law for that vehicle or that the owner, registrant or driver was requested to provide proof of financial responsibility to the department, a police officer or another driver and failed to do so. Notice to the department of the lapse, termination or cancellation or the failure to provide the requested proof of financial responsibility shall create a presumption that the vehicle lacked the requisite financial responsibility. This presumption may be overcome by producing clear and convincing evidence that the vehicle was insured at all relevant times.
>
> 75 Pa.C.S. § 1786(d)(3).

8. Fell acknowledges in his brief that "PennDOT sustained its 75 Pa.C.S.A. § 1786 burden of proof and established its *prima facie* case by production of an electronic transmission from AIG indicating that Fell's automobile insurance had been terminated." (Fell's Br. at 11.) However, Fell later argues that "[w]e ask the Court to examine the prima facie case of the Commonwealth based upon a computer generated notice of cancellation compared with petitioner's proof that the insurance company, AIG, actually did provide insurance." (Fell's Br. at 17.)

75 Pa.C.S. § 1786(a),[9] or that the vehicle owner fits within one of the three statutorily defined defenses outlined in Section 1786(d)(2)(i-iii) of the MVFRL, 75 Pa.C.S. § 1786(d)(2)(i-iii).[10] *Eckenrode v. Department of Transportation, Bureau of Driver Licensing,* 853 A.2d 1141, 1145 (Pa. Cmwlth.2004) (finding that "[t]he burden then shifted to Licensee to prove by clear and convincing evidence that the vehicle was insured at all relevant times or, in the case of suspended operating privileges, that the vehicle was insured when it was driven. Section 1786(d)(3)(ii)."); *see also, Webb v. Department of Transportation, Bureau of Motor Vehicles,* 870 A.2d 968, 972–73 (Pa.Cmwlth.2005) (finding that Section 1786(d)(3)(ii) "expressly and clearly anticipates the introduction of evidence directed at establishing that insurance was in effect at all relevant times, which evidence could clearly include evidence opposing an alleged policy cancellation relied upon by DOT.") However, under the statutory system in place, "a challenge to an insurance policy cancellation may only be brought by a timely request to the Insurance Commissioner." *Webb,* 870 A.2d at 972.[11] In the present case, Fell character-

9. This subsection provides that: "**(a) General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility."

10. The three statutorily defined defenses set forth in Section 1786(d)(2)(i-iii) of the MVFRL, 75 Pa.C.S. § 1786(d)(2)(i-iii), are:
(i) The owner or registrant proves to the satisfaction of the department that the lapse in financial responsibility coverage was for a period of less than 31 days and that the owner or registrant did not operate or permit the operation of the vehicle during the period of lapse in financial responsibility.
(ii) The owner or registrant is a member of the armed services of the United States, the owner or registrant has previously had the financial responsibility required by this chapter, financial responsibility had lapsed while the owner or registrant was on temporary, emergency duty and the vehicle was not operated during the period of lapse in financial responsibility. The exemption granted by this paragraph shall continue for 30 days after the owner or registrant returns from duty as long as the vehicle is not operated until the required financial responsibility has been established.
(iii) The insurance coverage has terminated or financial responsibility has lapsed simultaneously with or subsequent to expiration of a seasonal registration, as provided in section 1307(a.1)(relating to period of registration).

11. The trial court took great issue with the electronic transmission that DOT received from AIG, stating that:

In this Court's view, the rule which allows [DOT] to produce a non-validated, uncertified, undated, contextually vague, electronically generated document in satisfaction of its burden of proof in a matter as serious as a registration suspension is incorrect and works an unfairness on the registration holder. In the registration suspension appeals brought before this Court, [DOT] has only supplied the electronically derived document as evidence of non-insurance and has never offered the alternative proof of certified documents. [DOT's] application of 75 Pa.C.S.A. § 1377(b)(2) promotes situations, like the instant one, where the electronic transmission erroneously and improperly issued, and its bald assertion of insurance termination triggered [DOT's] response of a final registration suspension. (Trial Court Op. at 9 n. 4.) We note that the language of Section 1377(b)(2) of the Vehicle Code specifically directs that "the department's certification of its receipt of documents or electronic transmission from an insurance company informing the department that the person's coverage has lapsed, been canceled or terminated *shall also constitute prima facie proof* that the lapse, cancellation or termination of the policy of insurance described in the electronic transmission was effective under the laws of this Commonwealth." 75 Pa.C.S. § 1377(b)(2)(emphasis added). Additionally, the trial court seems to put the cart before the horse by concluding that the transmission was "erroneously and improperly issued"—it is not clear that the transmission was erroneously issued, and any question as to the whether the policy was

izes his argument as "not rebutting cancellation, per se, but proving insurance." (Fell's Br. at 17.)

In establishing whether the coverage was continuous or whether the lapse falls within one of the exceptions, the licensee must present "clear and convincing evidence [which] is defined as [evidence] 'that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " *Fagan*, 875 A.2d at 1199 (quoting *Matter of Larsen*, 532 Pa. 326, 332, 616 A.2d 529, 532 (1992)). Whether evidence meets this standard is a question of law, and evidence may be substantial yet fail to meet the more stringent standard of clear and convincing. *Id.*

DOT argues that the trial court erred in finding that Fell's evidence, that AIG did not cancel his policy on May 14, 2005, satisfied the "clear and convincing evidence" standard set forth in Section 1786(d) of the MVFRL. DOT contends that Fell's mere testimony that he had insurance on the 2005 Scion on May 14, 2005, would not be considered "clear and convincing evidence" and that the documentary evidence submitted by Fell also does not satisfy the "clear and convincing evidence" standard. DOT argues that none of the documents admitted into evidence by Fell in support of his appeal

established that his insurance policy was not cancelled by AIG on May 14, 2005. DOT contends that there is simply nothing in the record to show that the electronic transmission from AIG to DOT, showing cancellation of Fell's policy on May 14, 2005, was erroneous. We agree that Claimant has failed to present clear and convincing evidence to rebut the presumption that the insurance was cancelled and therefore the vehicle lacked insurance coverage.

Fell failed to present any evidence that he maintained coverage on the cancellation date of May 14, 2005 and continuously thereafter, and he has not satisfied any of the three defenses in Section 1786(d)(2)(i-iii). This Court has held that uncorroborated testimony is insufficient to meet the strict evidentiary standard required to overcome the statutory presumption. *Fagan*, 875 A.2d at 1199. Additionally, a financial responsibility insurance card is insufficient to prove coverage on a particular date because if insurance coverage is cancelled or terminated, the policyholder would still have the proof of insurance card indicating that he or she had insurance during the entire policy period. *See Capone v. Department of Transportation, Bureau of Driver Licensing*, 875 A.2d 1228, 1231–32 (Pa.Cmwlth.2005) (holding that "production of a financial responsibility insurance card is insufficient to prove coverage on a particular date").[12] Additionally, the cancelled check does not indi-

---

improperly cancelled seems to be an issue within the province of the Insurance Commissioner.

**12.** We noted in *Jennings v. Department of Transportation, Bureau of Driver Licensing*, 715 A.2d 552 (Pa.Cmwlth.1998):

The mere failure to produce proof of insurance does not establish that the person lacked insurance any more than the production of an insurance card will prove that the person had insurance. For example, an insurance company will send a 'proof of insurance' card to the policyholder when

the policy takes effect. This card covers the entire policy period, typically six months or one year. However, if the insurance is cancelled or terminated prior to the end of the policy period, a vehicle owner would still have this proof of insurance card indicating that he or she has insurance, when, in fact, that is no longer the case.

*Id.* at 555 n. 6. Evidence was presented as to the status of Fell's insurance at the time of the new car purchase, but this precedes the termination date of his policy by several weeks. Similarly, the evidence regarding AIG's involvement in addressing Fell's early May 2005

cate that the payment, when eventually accepted, was sufficient to cover amounts Fell owed to AIG. The evidence, at best, indicates that a payment was made, not that the necessary amount of the payment was made or that it was made timely.[13]

The trial court relies on evidence of what it characterizes as a continued relationship between AIG and Fell. We disagree with the trial court that evidence showing that at some point, months after the insurance was terminated, Fell was again covered by the carrier, establishes that on the dates in question, he was covered by insurance. If he had maintained continuous coverage, he could have shown that simply with a letter from his agent or the insurance company. DOT's letter of July 14, 2005, which Fell offered into evidence, clearly directed him to obtain such a letter of coverage from his insurer. For whatever reason, he did not do so.[14] Accordingly, because DOT unquestionably met its burden that Fell's insurance was terminated by AIG, and because Fell did not present clear and convincing evidence to rebut that presumption, Fell's appeal must be denied.

Based on our resolution of DOT's first issue, we need not reach its second issue.[15]

---

automobile accident preceded the cancellation date by several weeks. This evidence merely establishes that, during the period that Fell was still insured, AIG acted on a claim. Fell presents no evidence that shows that during the period of May 14, 2005 through mid-July 2005, Fell maintained insurance on the vehicle and took sufficient steps to prevent the insurance from being cancelled on that date.

13. We note that Fell does not dispute that he failed to make a payment on time. He acknowledges that the April payment did not process until two to three weeks after its due date, on May 2, 2005. His argument seems to be that, because the check cleared, his account became current and his insurance never lapsed.

The problem with his argument is that there is no evidence presented that the amount of the check represented the amount that he owed—there is no invoice or statement indicating how much he was required to pay to make his account current. Worth noting is that, on a timeline of events that Fell created and submitted into evidence, the first item listed on that timeline, as having been sent in "April 2005," is a "[l]etter from AIG indicating that Mr. Fell must pay [his] premium." (Tr. Fell Ex. 15.) That letter, which may perhaps have contained the amount owed, was not produced into evidence.

We note also in the original record is a carbon copy of a check Fell wrote to AIG on February 2, 2005, in the amount of $89.36. It is not clear what this check is intended to establish. First, unlike the April and July checks which, at least, contain marks showing that they have been processed and cancelled, this February check is only the carbon duplicate of the check and, thus, there is no cancellation mark.

14. We note also that this first letter from DOT specifically told him to obtain a letter from his insurance company indicating that he had indeed maintained coverage. This is a reasonable request and had Fell produced such a letter it would likely have met his burden.

15. DOT argues that the trial court erred and exceeded its scope of review in ruling that the current statutory scheme, which does not include a provision giving the Insurance Commissioner the ability to rescind a vehicle registration suspension imposed under Section 1786(d)(1), is "valueless and no remedy at all." (DOT Br. at 4.) While the facts of the present case make the only issue before this Court to be one of evidentiary burden, we note that we have not been uncritical of this statutory system, and have pointed out its deficiencies.

We have described this statutory systems as:
a parallel, two-part system whereby a request for review of the validity of an insurer's alleged cancellation of a policy is to be directed towards the Insurance Commissioner, and a request for review of DOT's suspension of a vehicle registration, on the grounds of a lack of insurance, is to be directed towards a court of common pleas. *Accord Choff v. Department of Transporta-*

Accordingly, the trial court's order is reversed.

Judge SMITH-RIBNER dissents.

tion, 861 A.2d 442 (Pa.Cmwlth.2004) (Insurance Department's determination that notice requirements had been satisfied in policy cancellation operated to prevent appellees from rebutting presumption of cancellation established by DOT with its introduction into evidence of notice from insurer to DOT regarding that cancellation; additionally, appellees could be precluded from collaterally attacking Insurance Department's determination of valid cancellation notice in an appeal to a trial court of DOT's registration suspension.)

*Webb*, 870 A.2d at 972. This Court has described the statutory system as being less than perfect:

> We note that the General Assembly's amendments to Section 1786 have resulted in a less than precise two part statutory review scheme. Only subsection (5) makes any reference to a request for review of a policy cancellation by the Insurance Commissioner, and the amended Section provides no procedure or guidance for recourse or review for a registrant who was not timely notified of a policy cancellation—a circumstance that surely cannot be seen to be a rare occurrence in terms of challenges to subsequent DOT registration suspensions founded upon policy cancellations.

*Webb*, 870 A.2d at 974 n. 8. We have also noted that "the Insurance Law is a remedial law to be liberally construed in order to effectuate its goal of protecting the public interest" and that allowing a case to proceed before the insurance commissioner, *nunc pro tunc*, or even transferring a case to the insurance commissioner that was inappropriately raised before a court of common pleas, would be "consonant with" the goal of the insurance law "under certain narrow circumstances." *Webb*, 870 A.2d at 974. We have identified that, even in applying these principles, there may be "potential due process ramifications of ... an aggrieved registrant who has been denied an opportunity to be heard in the face of a denial of an untimely *nunc pro tunc*

## ORDER

NOW, June 8, 2007, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby **REVERSED.**

appeal to the Insurance Commissioner brought outside of the thirty day timely review period afforded by Section 2008(a) of the Insurance Law, 40 P.S. 991.2008(a)." *Id.* at 974, n. 8.

This case is not one involving potential deficiencies or peculiarities in the manner in which automobile insurance suspensions for non-payment are addressed. This particular case does not present due process ramifications. Fell was aware of the relief available to him through the Insurance Department and he, at least initially, pursued it. Fell did not introduce into evidence any additional documentation regarding the claim with the insurance commissioner, although, in the present appeal, DOT has attached to its brief a copy of a letter from the Insurance Department to Fell, in which the Insurance Department did explain the results of its investigation into Fell's claim. This letter is not part of the original record and we have not considered it in rendering our decision. Nonetheless, it is clear that Fell was aware that a remedy existed with the Insurance Department.

Additionally, Fell had an opportunity to raise a challenge before the trial court, but as discussed earlier, he failed to present sufficient, competent evidence to meet his burden. The parties raise questions as to the admissibility of particular pieces of evidence offered by Fell. For purposes of this appeal, we have accepted as admissible all documents submitted by Fell and admitted by the trial court as being admissible. On closer review, it is quite likely that some, if not most of these documents would be inadmissible. Nonetheless, even considering all of them, we still find that Fell has failed to present sufficient evidence to meet his burden.

Thus, this is not a case where a licensee was left without a means for relief, either by lack of notice or by ignorance of law. Fell has had his proverbial day in court and, based on the evidence he presented, has failed to meet his burden.

DISSENTING OPINION BY Judge COLINS.

I must respectfully dissent from the conclusions of the majority. I believe that there was "clear and convincing evidence" of record to support the trial court's findings. The majority is substituting its evaluation of the evidence for the trial court's. We are not the trier of fact in the instant matter, and we should not be substituting our evidentiary conclusions for that of the trial court.

Therefore, I would affirm the order of the Court of Common Pleas of Bucks County.

Judge SMITH–RIBNER and Judge FRIEDMAN join in this dissent.