**PennDOT v. Poe**

*Marc A. Werlinsky,* for Commonwealth.
*Kia Poe,* pro se.

RAU, *J.,* November 7, 2007—

## I. INTRODUCTION

In this suspension of registration case, the Pennsylvania Department of Transportation appeals this court's decision that defendant Kia Poe had uninterrupted liability coverage, a decision based on documentation which PennDOT itself would have accepted as proof of insurance and buttressed by additional credible testimony. PennDOT belatedly objects to evidence that was admitted at trial, and also challenges the Honorable Judge Alan Silberstein's decision to permit the defendant-appellee to proceed nunc pro tunc.

This case stems from a suspension action under 75 Pa.C.S. §1786(d)(1), which requires PennDOT to sus-

pend the registration of any vehicle found not to have had liability insurance. In June 2006 PennDOT sent Kia Poe a form letter stating that it believed she had lost her liability coverage as of March 21, 2006. (Trial tr. 3:8-10; pl. exhibit C-1 no. 4.) Ms. Poe testified that she attempted to provide PennDOT with proof of uninterrupted insurance, but accidentally sent in the wrong insurance card. (Trial tr. 5:19-23.) When Ms. Poe learned of her mistake she went back to PennDOT and was told that she had the correct paperwork, but that PennDOT would no longer accept it because she had filed an appeal. (Trial tr. 6:7-12, 7:1-6.) This court found that the documentation Ms. Poe possessed, in combination with her testimony, constituted clear and convincing evidence that Ms. Poe had uninterrupted insurance as required by section 1786(d)(1).

PennDOT now appeals this court's decision, arguing that Ms. Poe's evidence does not satisfy the clear and convincing standard and involved hearsay. It also takes the position that Judge Silberstein should not have permitted Ms. Poe, who filed for appeal two days late, to proceed nunc pro tunc.

## II. FACTUAL BACKGROUND

AIG National Insurance Co., Ms. Poe's automobile insurer, notified PennDOT that coverage on Ms. Poe's Ford Focus had ended on March 21, 2006. (Trial tr. 3:8-10; def.'s exhibit P-2.) The automated notice PennDOT received contained no explanation for the supposed termination of Ms. Poe's coverage,[1] (Pl.'s ex-

---

1. Plaintiff's exhibit C-1 no. 2, the electronic notification, contains the following entry: "Term Reason: 5 Not Ident."

hibit C-1 no. 2,) and PennDOT was aware that Ms. Poe might be covered despite the notice. (Pl.'s exhibit C-1 no. 4.) There was credible testimony that Ms. Poe had opted for a different deductible (Trial tr. 9:1-2), which could have resulted in a notice to PennDOT even if coverage was to continue. Recognizing that such things could occur, PennDOT sent Ms. Poe a form letter instructing her to submit proof that she had insurance after March 21, and explaining what would constitute adequate evidence. (Trial tr. 4:3, pl. exhibit C-1 no. 4.) Among the documents which would serve as sufficient proof was an "[i]nsurance identification card." (Pl.'s exhibit C-1 no. 4.) Ms. Poe was in possession of two such cards, one valid from September 21, 2005 to March 21, 2006 and another from March 21, 2006 to September 21, 2006. (Def.'s exhibit P-1.)

Ms. Poe accidentally sent PennDOT the former card, which only stated that she was insured up to March 21, 2006, rather than the latter card, which reflected her continuing coverage from that date forward. (Trial tr. 4:9-11.) She testified that she realized her mistake when she received another form letter from PennDOT stating that her registration was being suspended. (Trial tr. 4:8-10, pl's exhibit C-1 no. 1.) Ms. Poe appealed 32 days after the suspension notice had been sent, two days after the 30-day time limit. (Pl.'s exhibit C-1 no. 1.)

There was further credible testimony from Ms. Poe that after filing her appeal she contacted PennDOT directly in an effort to present both the correct insurance card and a letter from her insurance company. (Trial tr. 6:7-9.) The insurance card indicated that she had new insurance starting the very date that PennDOT believed

her coverage was to end, and AIG had told her that the letter "should be sufficient because they checked off the coverage." (Trial tr. 9:4-6.) PennDOT employees informed her that her documentation was "acceptable." (Trial tr. 7:1-6.) Nevertheless, they refused it on the ground that she had already appealed. (Trial tr. 6:11-12.)

## III. PROCEDURAL HISTORY

Ms. Poe filed her appeal on August 23, 2006, and attended a nunc pro tunc hearing on September 15, 2006.[2] The now-retired Judge Silberstein granted her request to proceed nunc pro tunc, and with that her late appeal was forgiven. After trial on August 3, 2007, this court found that there was clear and convincing evidence that Ms. Poe had insurance throughout the relevant period and sustained her appeal of the agency's decision. On August 24, 2007 PennDOT filed an appeal and the statement of errors complained of required under Pa.R.A.P. 1925(b).

## IV. LEGAL DISCUSSION

In a suspension of registration case under 75 Pa.C.S. §1786, "[Penn]DOT bears the initial burden of showing that a lapse in the required financial responsibility has occurred." *Fell v. PennDOT,* 925 A.2d 232, 237 (Pa. Commw. 2007). It is undisputed that PennDOT proved its prima facie case, and thereby established a rebuttable presumption that Ms. Poe's vehicle was without insurance. 75 Pa.C.S. §1786(d)(3)(ii); *Fell,* 925 A.2d at 237.

---

2. This court's docket gives a date of September 15 for the nunc pro tunc hearing, while the transcript is dated December 15. Given the dates of later events in the case, the September 15 date seems the more likely of the two.

Thus, the burden shifted to Ms. Poe to "prove that financial responsibility was continuously maintained on the vehicle . . . ." *Fell,* 925 A.2d at 237. To do so, she had to offer "clear and convincing evidence that the vehicle was insured at all relevant times." Section 1786(d)(3)(ii). This court found that Ms. Poe did so.

PennDOT raises, in effect, three issues for appeal. First, it challenges the sufficiency of the evidence supporting this court's finding that there was clear and convincing evidence of uninterrupted liability coverage. Second, it argues that the insurance card indicating that Ms. Poe had insurance for her automobile from March 21, 2006 to September 21, 2006 was hearsay and as such was inadmissible. Third, PennDOT appeals the now-retired Judge Silberstein's decision to allow Ms. Poe to proceed nunc pro tunc. (Pl.'s s. of errors complained of on appeal, ¶¶1, 2.) It is not this judge's role to address what reasons Judge Silberstein may have had in making his decision to grant Ms. Poe's filing of the appeal two days late. Nonetheless, this opinion will address whether there is sufficient evidence in the record that would justify a nunc pro tunc filing based on a breakdown in the system and blameless mischance. *Id.*

A. *This Court Found Clear and Convincing Evidence That Ms. Poe Had Uninterrupted Liability Coverage*

This court did not err in finding that there was clear and convincing proof that Ms. Poe had uninterrupted liability coverage because it was entitled to rely on the credible evidence presented at trial, including—but not limited to—evidence which PennDOT itself conceded was "acceptable" proof of insurance. (Trial tr. 7:1-6.)

This court's review of PennDOT's conclusions regarding the status of Ms. Poe's insurance is de novo. See *e.g.,* 75 Pa.C.S. §1786(d)(3) ("An owner whose vehicle registration has been suspended . . . shall have the same right of appeal under section 1377 (relating to judicial review) as provided for in cases of the suspension of vehicle registration for other purposes."); 75 Pa.C.S. §1377(a) (giving the court hearing the appeal the power to, among other things, hear evidence); *Gary Barbera Dodge Inc. v. PennDOT,* 549 Pa. 100, 107-108, 700 A.2d 922, 926 (1997) ("Barbera's appeal was taken pursuant to 75 Pa.C.S. §1377(a) . . . As with driver's license suspension and revocation appeals under section 1550, the common pleas court's consideration of the matter is de novo." (emphasis omitted)). As a court conducting a de novo review, this court was entitled to arrive at its own conclusions, consistent with the law, as to what constituted clear and convincing evidence.[3] The "Commonwealth Court's review of a

---

3. At trial, PennDOT seemed to take the position that the question was whether or not the evidence was clear and convincing to PennDOT, not to this court. (Trial tr. 3:1-2, 4:23-24, 5:1-2, 17, 7:20-24, 8:1-7, 12-15.) This position is entirely inconsistent with the basic structure of American justice. In an adversarial system like that employed in American courts, the defendant never bears the burden of convincing his or her accuser of his or her position. Rather, the court or a jury finds the facts which determine who is in the right. See *McNeil v. Wisconsin,* 501 U.S. 171, 181 n.2 (1991) (defining the adversarial system, and distinguishing the adversarial system from the inquisitorial system used in other countries and during criminal investigations). PennDOT's position would reduce the role of this court to that of a mediator, maintaining civility between the parties and encouraging them to resolve the matter between themselves. That is entirely contrary to the task the law instructs this court to perform in appeals from PennDOT's suspension decisions. See 75 Pa.C.S. §1337(a) (empowering courts to conduct de novo appeals from PennDOT suspension of registration decisions).

trial court order sustaining a statutory appeal from a suspension of registration is limited to determining whether the necessary findings of fact are supported by substantial evidence and whether the court committed a reversible error of law or abused its discretion." *Fagan v. PennDOT,* 875 A.2d 1195, 1197 n.1 (Pa. Commw. 2005).

The Commonwealth Court has provided guidance as to what constitutes clear and convincing evidence of uninterrupted liability insurance coverage. First and foremost, it has stated the general rule that "[i]n establishing whether the coverage was continuous . . . the licensee must present clear and convincing evidence which is defined as evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Fell,* 925 A.2d at 239 (internal quotation and alteration marks omitted). Furthermore, the Commonwealth Court has noted some forms of evidence which standing alone are inadequate as a matter of law to satisfy the clear and convincing standard. These include uncorroborated testimony that a motorist's vehicle had uninterrupted coverage, *Fagan,* 875 A.2d at 1199, and insurance cards by themselves, *Capone v. PennDOT,* 875 A.2d 1228, 1231 (Pa. Commw. 2005).

Far from relying solely on uncorroborated testimony or insurance cards alone, Ms. Poe offered absolutely credible testimony backed by relevant documentary evidence showing that she had uninterrupted insurance coverage. Ms. Poe credibly testified that she had the requisite proof of insurance all along. (Trial tr. 5:19-21.) Her testimony was supported by her further statements that she had contacted PennDOT directly in an attempt

to resolve its concerns, even identifying the persons to whom she had spoken. (Trial tr. 7:1-2.) Her efforts to resolve her dispute with PennDOT outside of court bolstered her testimony that she had the required insurance. In addition, Ms. Poe was the only person involved in the case who had an explanation for why AIG had referred her to PennDOT: she testified that she had "changed the deductible" on her policy, and the change in the terms of her policy may have generated a notification. See generally, 40 Pa.C.S. §991.2006(6) (requiring an insurer canceling coverage to explain that it will notify PennDOT of a loss of coverage, but that the motorist must show evidence of new coverage him or herself); 75 Pa.C.S. §1786(e) (requiring an insurer canceling coverage to report the cancellation to PennDOT); 67 Pa. Code §221.3(a) (imposing the same requirement); (Trial tr. 9:1-2.).[4]

---

4. The court would take this opportunity to commend 75 Pa.C.S. §1786(e) and 67 Pa. Code §221.3(a) to the attention of the legislature. These statutes have created serious difficulties by requiring insurance companies to notify PennDOT only of the end of coverage, and not of the beginning of new coverage. Consequently, if a citizen simply changes insurance policies or carriers but has uninterrupted insurance coverage, a notice of termination is sent to PennDOT but no corresponding notice of new coverage is sent. Upon receipt of this termination notice and with no information of other insurance coverage, PennDOT sends out a notice to the licensee requiring prompt proof of insurance coverage. This has resulted in situations wherein hundreds of law-abiding citizens making normal changes to their insurance policies have their registration revoked because they were unable to navigate through the process of confirming their liability insurance with PennDOT. If insurance companies were required to notify PennDOT of the beginning of new coverage as well as the end of an old policy, these citizens would never be at risk of unwarranted punishment.

Ms. Poe's testimony was corroborated by the insurance cards which PennDOT itself, in its form letter to her, stated it would consider adequate proof of coverage. (Pl.'s exhibit C-1 no. 4.) Indeed, the insurance cards here were ideal for PennDOT's purposes. The alleged date of end of coverage was not in the middle of a term covered by an insurance card, when an insured might have gotten a card at the beginning of the term of coverage and then ceased payment. See generally, *Jennings v. PennDOT,* 715 A.2d 552, 555 n.6 (Pa. Commw. 1998) (explaining why insurance cards, without more, are not proof of insurance). Rather, the cards reflect a routine renewal of the policy in traditional six-month intervals, with the termination notice to PennDOT explained by the roll-over in coverage periods combined with an alteration to the policy. Furthermore, the cards stood unrebutted, with PennDOT offering no evidence that they were incorrect beyond the routine electronic notification that was a part of its prima facie case.

The strength of the evidence Ms. Poe offered distinguishes this case from similar cases in which the evidence was legally inadequate to meet the clear and convincing standard. In *Fagan v. PennDOT,* the Commonwealth Court was asked to decide a case in which Joan Fagan testified that her insurance company had agreed to overlook a late payment, but could not say who she had spoken to at her insurer and had no documentation except a cancellation notice and a refund check from the insurer.[5] 875 A.2d at 1197, 1199. By contrast, Ms. Poe is

_____

5. One further notes that Ms. Fagan's case was built on hearsay statements from her insurer. By contrast, Ms. Poe relies in part on statements made by PennDOT, her party-opponent in this case. See

not alleged to have been delinquent in her payments and testified credibly as to whom she had spoken with at PennDOT while trying to comply with statutory requirements. (Trial tr. 7:1-6.) In addition, the only letter in the record from her insurance company reflects no payment problems whatsoever. (Def.'s exhibit P-2.) The factual differences between this matter and *Fagan* distance the two and warrant a different view of the evidence here.

Similarly, *Capone v. PennDOT* does not prevent Ms. Poe's evidence from being considered clear and convincing. Capone involved the registration for a Pontiac Sunbird suspended under section 1786. The owners appealed, but conceded that the insurance premiums for the Sunbird had not been paid because the bank account from which the premiums were automatically withdrawn did not have sufficient funds. 875 A.2d at 1230. Hence, the Capones' efforts to prove that they had liability insurance were undermined by their own admission that the insurance company had cause to terminate their coverage. By contrast, there is no evidence whatsoever indicating that Ms. Poe has ever missed a payment. Rather, the unrebutted testimonial evidence is that the only significant recent change in her insurance status was her choice of a different deductible. (Trial tr. 9:1-2.) The differing contexts in which the two cases were decided distinguish *Capone* from this case.

Finally, this matter is also distinguishable from *Fell v. PennDOT.* In *Fell,* a motorist's check to his insurance company was temporarily dishonored in April of 2005.

---

generally, Pa.R.E. 803(25)(D) (creating a hearsay exception for admissions of a party-opponent); *Harris v. Toys "R" Us-Penn Inc.,* 880 A.2d 1270, 1275 (Pa. Super. 2005) (stating the elements of Pa.R.E. 803(25) (D)).

925 A.2d at 234. He resubmitted the check, and payment went through in early May. *Id.* at 235. He also made a claim to his insurer that month. *Id.* at 235. However, his insurer had already reported to PennDOT that his coverage was to end on May 14, 2005. *Id.* at 234, 235 n.5. At trial, Mr. Fell introduced evidence of the May premium payment, the May claim, and a July payment to his insurer. He also provided an insurance card for the relevant period. The Commonwealth Court found that the documentary evidence provided by Mr. Fell "preceded the cancellation date by several weeks." 925 A.2d at 239 n.12. Hence, there was inadequate evidence showing that Mr. Fell was still insured in mid-May, after he had submitted his claim. Furthermore, Mr. Fell did not dispute that he made a late payment. Indeed, he admitted that he had received a letter from his insurer instructing him to pay, and he had never proved that the checks he sent were adequate and complete payments such as would reinstate his policy. *Id.* at 240 n.13. Moreover, Mr. Fell's own documentation reflected inexplicably small payments to AIG, which AIG may or may not have accepted. *Id.* There was therefore a gap in Mr. Fell's evidence, filled only by an insurance card from a policy whose premiums might not have been paid, for the very period in which PennDOT alleged he had been uninsured. *Id.* at 240.

Whereas Mr. Fell admitted that he fell behind in his payments and thereby triggered the notice to PennDOT, Ms. Poe gave the unrebutted and absolutely credible explanation that her policy was altered—but never interrupted—by a change in its deductible, which resulted in a notice to PennDOT without negligence or failure on her part. (Trial tr. 9:1-2.) As a result, Ms. Poe's evidence

is not weakened by past mistakes as Mr. Fell's was. Her case is therefore distinguishable from *Fell,* and her evidence should be seen in the better light it deserves.

Hence, the critical point of separation between *Fagan, Fell,* and *Capone* on the one hand and Ms. Poe's case on the other is the sheer weight of the evidence Ms. Poe had on her side. In none of those cases did the petitioner have an unrebutted rendition of events that supported continuous insurance coverage while fully explaining the automated notice of termination received by PennDOT. Instead, those petitioners were arguing in a context of payment problems which made failure to keep up with premiums the most likely explanation for why their coverage had been terminated, and there was convincing evidence against them as well as in their favor. See *Fell,* 925 A.2d at 234 (discussing the record regarding a bad check); *Capone,* 875 A.2d at 1230 (recording Mr. Capone's admission that premiums had gone unpaid); *Fagan,* 875 A.2d at 1197 (pointing out that Ms. Fagan missed the initial premium payment). Ms. Poe stands in an entirely different position than Mr. Fell, Ms. Fagan or the Capones did.

Yet, in distinguishing the specifics of this case from those of other cases it is important not to lose sight of the overall impact of Ms. Poe's evidence. Ms. Poe was able to provide a "clear, direct, weighty, and convincing" explanation for what had happened and why it had happened that way. *Fell,* 925 A.2d at 239. The insurance cards, the letter from AIG,[6] and Ms. Poe's credible tes-

---

6. Defendant's exhibit P-2, the letter from AIG, relates to a policy effective from December 23, 2006 to December 23, 2007. However, a box is checked for "no lapse in coverage" and for "financial responsi-

timony—most notably with regard to the reason why PennDOT received the original notice of termination of coverage—faced PennDOT's allegations squarely and provided a straightforward description of what had actually transpired. PennDOT rested solely on the presumption that the automated notice to PennDOT created and provided no testimony rebutting that of Ms. Poe's explanation for the termination notice. At the conclusion of the trial, this court found Ms. Poe's evidence of uninterrupted insurance coverage clear and convincing and that it compellingly defeated the initial presumption.

The Commonwealth Court commented in *Fell* that "[t]his case *[Fell]* is not one involving potential deficiencies or peculiarities in the manner in which automobile insurance suspensions for non-payment are addressed." *Id.* at 240 n.15. Ms. Poe's case does seem to be one relating to "deficiencies or peculiarities"—specifically, a peculiarity whereby a change in Ms. Poe's deductible resulted in a notification of termination of coverage when in fact her insurance continued uninterrupted.[7] She established that she was insured for the relevant period by unrebutted, entirely credible testimony which was sup-

---

sibility filing" the "no" box is checked. Given AIG's statement to Ms. Poe that the letter was "sufficient," it seems likely that the notations on the letter indicate that there has never been a lapse of coverage. (Trial tr. 9:4-6.)

7. This court is of course aware that, under 75 Pa.C.S. §1786(d)(5), complaints regarding the actions of insurance companies are not before this court. This court does not intend to pass judgment on Ms. Poe's insurer, which must act in conformity with the regulatory scheme in place. The question of what caused the insurer to generate the notice of termination is commented upon only insofar as it has relevance to the congruence of this case with those previously heard by the Commonwealth Court.

ported by relevant documents of the very type that PennDOT itself requests from drivers who may not be insured.[8] Individual aspects of Ms. Poe's evidence would have been legally insufficient taken separately, or in a context in which there was additional evidence of a failure to remain current on insurance obligations. In the matter at hand, however, Ms. Poe's testimony and documents stood unchallenged. Based on the totality of the evidence presented at trial, there was substantial evidence supporting this court's determination that there was clear and convincing evidence of uninterrupted insurance coverage.

### B. *PennDOT Waived Any Objection to the Admission of the Insurance Cards by Failing To Object to Their Admission in a Timely Manner at Trial*

Since PennDOT did not object to the admission of Ms. Poe's insurance cards when they were offered and admitted into evidence during the trial, PennDOT cannot on appeal take issue with their introduction into evidence.

---

8. Needless to say, PennDOT must carry through its responsibilities according to the law, and is obliged to pursue cases according to the dictates of 75 Pa.C.S. §1786. Nevertheless, the court notes that there is something Kafkaesque about the idea that the more involvement Ms. Poe has with a legal system designed to protect her rights, the harder it becomes for her to show that she had insurance. Had Ms. Poe declined to appeal her suspension and simply gone to PennDOT with the card showing insurance beginning March 21, it is at least possible that her suspension would have been lifted then and there. Yet, because she exercised her legal rights according to PennDOT's instructions, (pl.'s exhibit C-1 no. 1,) PennDOT now argues that the insurance card, her previous card, a letter from AIG, and credible testimony combined are insufficient proof. If PennDOT's position is correct, then the petitioner takes one step forward and two steps back by filing an appeal, and ends up unfairly penalized for pursuing legal remedies.

The Supreme Court of Pennsylvania has stated that "[a] rule of evidence is waived if it is not invoked when the evidence is offered, and the rule, having been waived, cannot subsequently be invoked on appeal." *Commonwealth v. Kuterbach,* 458 Pa. 318, 319, 326 A.2d 283, 283 (1974). See also, *Takes v. Metropolitan Edison Company,* 548 Pa. 92, 98, 695 A.2d 397, 400 (1997) ("It is axiomatic that in order to preserve a trial objection for review, trial counsel is required to make a timely, specific objection during trial."). Consistently with *Kuterbach,* the Commonwealth Court has found an objection not to be timely where a party "failed to object to . . . testimony when offered." *In re The Condemnation by the County of Allegheny of a Certain Parcel of Land in Robinson Township, Allegheny County,* 70 Pa. Commw. 642, 645, 453 A.2d 744, 745 (1982). "[A] clear showing of an abuse of discretion" is required to disturb this court's decision to admit the insurance cards. *In re Penn-Delco School District,* 903 A.2d 600, 607 (Pa. Commw. 2006).

In this matter, PennDOT raised no objection to Ms. Poe's insurance cards at the time of their admission into evidence.[9] (Trial tr. 6:3-6.) The closest that PennDOT came to objecting to the insurance cards was after they were admitted and during oral argument when its attorney stated that "I cannot examine the financial responsibility card and I would say that . . . this is a hearsay

---

9. PennDOT did raise several other hearsay objections in proximity to the admission of the insurance cards, notably to statements made by PennDOT employees. (Trial tr. 6:11-14, 18-23.) None of those were to the cards themselves, however, and the court's rulings on those objections have not been appealed.

document." [10] (Trial tr. 10:5-7.) This statement was made after Ms. Poe had concluded her case. By that time, it was too late. *Kuterbach,* 458 Pa. at 319, 326 A.2d at 283; *In re Condemnation,* 70 Pa. Commw. at 645, 453 A.2d at 745.

A party cannot wait for an opportune moment and then weave its objections into a broader dialogue with the court. If PennDOT had an objection to the admission of Ms. Poe's insurance cards as evidence, it was obliged by the Pennsylvania Supreme Court's rules to raise it when the evidence was offered. *Kuterbach,* 458 Pa. at 319, 326 A.2d at 283. Even at that later stage in the hearing when PennDOT's counsel referred to the document as hearsay, he did not object to the earlier admission of the insurance cards nor ask the court to rescind its earlier admission of the documents.

Moreover, PennDOT should be bound as Ms. Poe's party-opponent by its statements in the letter sent to Ms. Poe that "acceptable proof of insurance" includes an "insurance identification card." (Pl.'s exhibit C-1 no. 4.) See generally, Pa.R.E. 803(25)(D) (stating the hearsay exception for admissions by a party-opponent). PennDOT admitted that insurance cards were acceptable evidence of insurance coverage in form letters, during agents' conversations with Ms. Poe and by failing to object to their admission at trial. It was not until PennDOT ap-

---

10. By the time PennDOT made this statement there were two insurance cards and a letter from AIG admitted into evidence. PennDOT did not create a clear record as to which particular piece of evidence was being characterized as hearsay. See generally, 74 Am.Jur.2d *Trial* §424 ("The matter objected to must be distinctly and sharply brought to the court's attention.").

pealed this court's decision that PennDOT first suggested that the court's admission of the insurance cards constituted trial error. By failing to object earlier, PennDOT waived this evidentiary issue for appeal. *Id.*

### C. *Ms. Poe's Filing of Her Appeal Two Days Late Should Be Excused Because Delays in the Notification Process Confounded Her Efforts To Comply With the Law*

Ms. Poe's petition to proceed nunc pro tunc was granted by the Honorable Judge Alan Silberstein, now retired. Although this judge did not decide this issue and has no insight as to Judge Silbertstein's reasoning, based on all of the evidence now available Ms. Poe had a good excuse for filing two days late under the law. A trial court's decision to grant a nunc pro tunc petition is reviewed for abuse of discretion. *Union Electric Corporation v. Board of Property Assessment,* 560 Pa. 481, 485, 746 A.2d 581, 583 (2000).

The Pennsylvania Supreme Court has explained that nunc pro tunc petitions can be granted where there is "fraud or some breakdown in the court's operation through a default of its officers." *Bass v. Commonwealth,* 485 Pa. 256, 259, 401 A.2d 1133, 1135 (1979), quoting *Nixon v. Nixon,* 329 Pa. 256, 260, 198 A. 154, 157 (1938). In applying this principle to administrative agencies, that court has stated that "there is a breakdown in the court's operations where an administrative board or body is negligent, acts improperly or unintentionally misleads a party. Thus, where an administrative body acts negligently, improperly or in a misleading way, an appeal nunc pro tunc may be warranted." *Union Electric Corporation,* 560 Pa. at 487, 746 A.2d at 584.

The record in this case is replete with indications that PennDOT unintentionally misled Ms. Poe. Ms. Poe was instructed, in a two-page form letter involving three different charts, to submit an "[i]nsurance identification card" within three weeks. (Pl.'s exhibit C-1 no. 4.) She did so. Over a month after the mailing of the first letter, she was told that the card she had offered was not useful to PennDOT. This new letter gave her 30 days from July 20, 2006, the date when the letter was mailed, to appeal. (Pl.'s exhibit C-1 no. 1.) Ms. Poe appealed 32 days later, which was almost certainly within 30 days of when the letter was actually received.[11] She then returned to PennDOT in an effort to set matters right, only to be told that specifically because she had appealed according to the instructions in PennDOT's letter, it was no longer possible for her to resolve the issue administratively through direct communication. (Trial tr. 6:11-12.) The letter bore no indication that Ms. Poe was being put to the choice of working out the dispute amicably or insisting on her rights. (Pl.'s exhibit C-1 no. 1.)

PennDOT's letters are clear enough to a reader trained in the law, but they do not include information that would keep laypeople like Ms. Poe from stumbling into error. Furthermore, at every stage of the process, Ms. Poe attempted to follow directions, and then was told only too late that her efforts had come to naught. When she received PennDOT's first letter Ms. Poe sent an insurance card. Ms. Poe's first warning that she had sent the wrong insurance card was her suspension notice. In response to

---

11. The record does not specify where the letter originated, but the letterhead reflects a Harrisburg return address, and Ms. Poe lives in Philadelphia. (Pl.'s exhibit C-1 no. 1.)

the suspension, Ms. Poe appealed using the address on the notice, and then sought to resolve the misunderstanding. At that point she learned that, although she had been following instructions given to her by PennDOT, she had closed the door to an amicable resolution by filing an appeal with the court. The overall effect was to mislead an unrepresented party into thinking she had successfully complied with the law.

The record evokes a number of instances when PennDOT unintentionally misled Ms. Poe with its letters. Each time she received a letter from PennDOT, Ms. Poe took an action in response which was essentially reasonable but somehow problematic. This pattern of unavailing but repeated efforts to meet PennDOT's requirements suggests that PennDOT's actions unintentionally misled Ms. Poe and resulted in her filing two days late. *Union Electric Corporation,* 560 Pa. at 485, 746 A.2d at 584 (appeal nunc pro tunc may be permissible if administrative agency's actions unintentionally mislead a litigant).

From the time she first received notice, Ms. Poe was actively attempting to demonstrate to PennDOT that her insurance had not lapsed, but simply been modified. Her filing of the appeal ultimately foreclosed her ability to resolve the matter administratively notwithstanding PennDOT's agents' admission that she finally had presented acceptable proof. If Ms. Poe is now precluded from having her case resolved by the courts because the appeal was two days late, procedural obstacles and confusing instructions will have unfairly penalized an innocent litigant who had continuous insurance and sincerely attempted to resolve the mistake in a timely

manner. Ironically, if Ms. Poe had not appealed the matter to the court, the entire matter would have been resolved in her favor months ago with the insurance card evidence that PennDOT now protests. Having been stripped of her administrative remedy by her appeal to the courts, Ms. Poe should not again be refused a fair resolution of her case. Complex procedural requirements should not ultimately frustrate a just outcome for Ms. Poe.

## V. CONCLUSION

Kia Poe submitted credible, unrebutted evidence showing that her automobile liability insurance coverage had been uninterrupted, and that AIG's notice to PennDOT of termination of coverage was a spurious result of alterations to her policy. Hence, there was substantial evidence supporting this court's finding that there was clear and convincing evidence that Ms. Poe complied with 75 Pa.C.S. §1786(a), requiring that she carry liability insurance. PennDOT's effort to object on appeal to a part of Ms. Poe's evidence, an insurance card establishing that she had coverage continuing from March 21, 2006, was waived by its failure to object to the admission of the cards at trial. This court's decision in favor of Ms. Poe was therefore both factually supported and legally correct.