IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Ducaji                        :

                               :

          v.                :     No. 790 C.D. 2015

                               :     Submitted: December 4, 2015

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

Bureau of Motor Vehicles,      :

              Appellant     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge[1]
               HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                         FILED: April 26, 2016

       The Department of Transportation, Bureau of Motor Vehicles (PennDOT), appeals an order of the Court of Common Pleas of Luzerne County (trial court) that sustained the statutory appeal of John Ducaji (Licensee) of a three-month suspension of his vehicle registration. At issue is whether Licensee presented clear and convincing evidence that he maintained automobile insurance on his vehicle as required by the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. C.S. §§1701-1799.7. We vacate and remand.

       Licensee is the registered owner of a 2010 Lexus station wagon that was insured by Travelers Insurance Company (Travelers). On November 22, 2014, Travelers terminated Licensee's policy for nonpayment of premium and

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

electronically reported the termination to PennDOT. On December 6, 2014, PennDOT notified Licensee that it had received a copy of Travelers' cancellation notice. On January 22, 2015, PennDOT informed Licensee that his vehicle registration would be suspended for three months effective February 26, 2015. Licensee appealed the suspension.

At the *de novo* hearing before the trial court, PennDOT submitted documents into evidence in support of the registration suspension, including: (1) the official suspension notice dated January 22, 2015; (2) PennDOT's record of the electronic transmission from Travelers regarding the cancellation of Licensee's vehicle insurance; (3) a form titled "Vehicle Inquiry Detail" showing that Licensee is the registered owner of the 2010 Lexus; (4) PennDOT's December 6, 2014, notification to Licensee that it had received the cancellation notice from Travelers; and (5) a Certification Statement attesting that the above-listed documents were true copies of those in PennDOT's files.

Licensee testified that he purchased an auto insurance policy from Travelers for the six-month period July 17, 2014, to January 17, 2015. He paid the premium for the full six-month term on July 17, 2014. At some point during the six-month term, Travelers re-rated his insurance and increased his premium. Licensee testified that "[Travelers] took the money out of [his] checking account to pay for the re-rate" and that "[Travelers] took it out of my prepaid amount for the full term." Notes of Testimony, 4/13/15, at 5 (N.T. ___); Reproduced Record at 13a (R.R. ___). Licensee stated that he never received a notice from Travelers that he had not paid the required premium.

Licensee testified that he learned his insurance policy had been terminated when he received PennDOT's December 6, 2014, notice. He contacted

2

Travelers and was informed that his policy had been cancelled for nonpayment of the additional re-rated premium amount. Licensee stated that he requested a copy of Travelers' written notice of cancellation but was told the company could not provide one. Licensee testified that there was no lapse in coverage because "the funds were there," "[Travelers] took them and applied them to that increased premium," and what is "on that statement, that $7, is what [Travelers] credit[ed] back to me. That was left after [Travelers] cancelled the policy for nonpayment and took the money for payment." N.T. 9-10; R.R. 14a-15a.

Licensee submitted the following documents into evidence: (1) a letter dated July 17, 2014, from Travelers issuing an auto insurance policy to Licensee for the period July 17, 2014, to January 17, 2015; (2) a financial responsibility card for the same six-month term for Licensee's 2010 Lexus issued by Travelers; (3) a billing activity sheet from Travelers; and (4) an email exchange between Licensee and Elizabeth Possinger, his agent at Suitch Insurance Agency.

The trial court found that Licensee "did not receive proper notice from Travelers that his insurance policy was cancelled pursuant to Section 2006 of Article XX of the Insurance Company Law [of 1921]."[2] Trial Court opinion at 3;

---

[2] Act of May 17, 1921, P.L. 682, added by the Act of June 17, 1998, P.L. 464, 40 P.S. §991.2006. Section 2006 states:

> A *cancellation* or refusal to renew by an insurer of a policy of automobile insurance *shall not be effective unless the insurer delivers* or mails to the named insured at the address shown in the policy *a written notice of the cancellation* or refusal to renew. The notice shall:
>
> (1) Be in a form acceptable to the Insurance Commissioner.
>
> (2) State the date, not less than sixty (60) days after the date of the mailing or delivery, on which cancellation or refusal to renew shall become effective. When the policy is being cancelled or not renewed for the reasons set forth in section 2004(1) and (2),

**(Footnote continued on the next page . . .)**

3

R.R. 42a. Because a policy cannot be cancelled without advance notice to the policyholder, Travelers did not effect a cancellation of Licensee's policy. Accordingly, the trial court concluded that PennDOT lacked a basis to suspend Licensee's registration. The trial court reasoned that the "evidence provided by [Licensee] that he had a valid financial responsibility card, which was corroborated by his payment records, is sufficient to overcome the statutory presumptions." *Id.*

---

**(continued . . .)**

however, the effective date may be fifteen (15) days from the date of mailing or delivery.

(3)   State the specific reason or reasons of the insurer for cancellation or refusal to renew.

(4)   Advise the insured of his right to request in writing, within thirty (30) days of the receipt of the notice of cancellation or intention not to renew and of the receipt of the reason or reasons for the cancellation or refusal to renew as stated in the notice of cancellation or of intention not to renew, that the Insurance Commissioner review the action of the insurer.

(5)   Either in the notice or in an accompanying statement advise the insured of his possible eligibility for insurance through the automobile assigned risk plan.

(6)   Advise the insured that he must obtain compulsory automobile insurance coverage if he operates or registers a motor vehicle in this Commonwealth, that the insurer is notifying the Department of Transportation that the insurance is being cancelled or not renewed and that the insured must notify the Department of Transportation that he has replaced said coverage.

(7)   Clearly state that when coverage is to be terminated due to nonresponse to a citation imposed under 75 Pa.C.S. § 1533 (relating to suspension of operating privilege for failure to respond to citation) or nonpayment of a fine or penalty imposed under that section coverage shall not terminate if the insured provides the insurer with proof that the insured has responded to all citations and paid all fines and penalties and that he has done so on or before the termination date of the policy.

40 P.S. §991.2006 (emphasis added).

4

The trial court sustained Licensee's appeal and voided the vehicle registration suspension. This appeal ensued.

On appeal,[3] PennDOT argues that the trial court erred in finding that Licensee offered clear and convincing evidence that he maintained financial responsibility on his 2010 Lexus. We agree.

Under Section 1786(d) of the MVFRL, PennDOT

> shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility.

75 Pa. C.S. §1786(d). To meet its burden under Section 1786(d), PennDOT must show that: (1) the vehicle is the type required to be registered and (2) PennDOT received notice that financial responsibility coverage had lapsed. 75 Pa. C.S. §1786(d)(3)(i), (ii). PennDOT may satisfy its burden by certifying that it received documents or electronic transmissions from the insurance company informing PennDOT that insurance coverage was terminated. Here, the trial court found that PennDOT "presented a certified copy of [its] record showing that it was notified that [Licensee's] insurance had lapsed as of November 22, 2014." Trial Court opinion at 2; R.R. 41a. With these documents, PennDOT made a *prima facie* case.

---

[3] In reviewing the grant of a statutory appeal of a vehicular registration suspension, this Court must determine whether the necessary findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Deklinski v. Department of Transportation, Bureau of Driver Licensing*, 938 A.2d 1191, 1194 n.5 (Pa. Cmwlth. 2007).

5

Once PennDOT establishes a *prima facie* case, the vehicle owner must prove that he continuously maintained financial responsibility on the vehicle as required by Section 1786(a) of the MVFRL, 75 Pa. C.S. §1786(a),[4] or that the vehicle fits within one of the three statutorily defined exceptions set forth in Section 1786(d)(2) of the MVFRL, 75 Pa. C.S. §1786(d)(2).[5] To establish that

_____

[4] Section 1786(a) states:

> (a)    General rule.**--**Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

75 Pa. C.S. §1786(a).

[5] Section 1786(d)(2) states:

> Whenever the department revokes or suspends the registration of any vehicle under this chapter, the department shall not restore or transfer the registration until the suspension has been served or the civil penalty has been paid to the department and the vehicle owner furnishes proof of financial responsibility in a manner determined by the department and submits an application for registration to the department, accompanied by the fee for restoration of registration provided by section 1960. This subsection shall not apply in the following circumstances:
>
> > (i)    The owner or registrant proves to the satisfaction of the department that the lapse in financial responsibility coverage was for a period of less than 31 days and that the owner or registrant did not operate or permit the operation of the vehicle during the period of lapse in financial responsibility.
> >
> > (ii)    The owner or registrant is a member of the armed services of the United States, the owner or registrant has previously had the financial responsibility required by this chapter, financial responsibility had lapsed while the owner or registrant was on temporary, emergency duty and the vehicle was not operated during the period of lapse in financial responsibility. The exemption granted by this paragraph shall continue for 30 days after the owner or registrant returns from duty as long as the vehicle is not operated until the required financial responsibility has been established.
> >
> > (iii) The insurance coverage has terminated or financial responsibility has lapsed simultaneously with or subsequent to

**(Footnote continued on the next page . . .)**

6

insurance coverage was continuous or that the lapse was excused under one of the exceptions, the licensee must present "clear and convincing evidence [which] is defined as [evidence] 'that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue.'" *Fell v. Department of Transportation, Bureau of Motor Vehicles*, 925 A.2d 232, 239 (Pa. Cmwlth. 2007) (quoting *Fagan v. Department of Transportation, Bureau of Motor Vehicles*, 875 A.2d 1195, 1199 (Pa. Cmwlth. 2005) (quoting *Matter of Larsen*, 616 A.2d 529, 532 (Pa. 1992))).

PennDOT argues that the trial court erred in finding that Licensee presented clear and convincing evidence that his Travelers policy did not lapse. PennDOT contends that Licensee's testimony that his vehicle was fully insured on the cancellation date, November 22, 2014, is not "clear and convincing evidence," nor is the documentary evidence he submitted.

Although Licensee testified that he had continuous insurance coverage, this Court has held that uncorroborated testimony is insufficient to meet the strict evidentiary standard required to overcome the statutory presumption. *Fagan*, 875 A.2d at 1199. Additionally, Licensee's documents did not corroborate his testimony that he had continuous insurance coverage. We consider Licensee's documents *seriatim*.

The first document consists of a series of emails from Licensee's insurance agent, Elizabeth Possinger. Rather than showing that Licensee maintained continuous coverage, these emails state that Licensee's auto insurance

---

**(continued . . .)**

> expiration of a seasonal registration, as provided in section 1307(a.1) (relating to period of registration).

75 Pa.C.S. §1786(d)(2).

coverage had been cancelled. Specifically, in an email dated January 28, 2015, Possinger stated: "As you requested, I contacted Travelers Insurance regarding the Cancellation Notice. It was sent first class mail with no signature required. None of these mailings were returned to our office as undeliverable." R.R. 27a. Further, Possinger's email referenced several documents that had been sent by Travelers to Licensee. Possinger emailed Licensee again on January 29, 2015, stating:

> [T]he Travelers representative stated the cancellation notice was sent by first class mail with no signature required…. Regarding the billing question ... the $256 additional premium was billed once and then again as the non-pay cancel notice with a $10 late fee added. So when the $273 unearned premium was applied to the $266 balance due, it created the $7 credit refund that was applied to your credit card on 12/8/14.

R.R. 26a. The emails do not corroborate Licensee's contention that he had continuous coverage. Licensee did not present any other correspondence from Travelers that he had coverage on his vehicle on November 22, 2014, and continuously thereafter.

Next, Licensee introduced a billing activity sheet showing a change to Licensee's auto policy on or about September 4, 2014, and that there was an invoice generated on September 29, 2014, showing a total due of $256.00. R.R. 28a. On October 28, 2014, a "non pay cancel notice" was generated with an amount due of $266.00. *Id*. On November 22, 2014, the auto policy was cancelled for non-payment. *Id*. Nowhere on the billing activity sheet does it state, however, that Licensee had coverage on November 22, 2014, and thereafter, or that his insurance coverage had been reinstated. Thus, the billing record does not corroborate Licensee's claim that he continuously maintained coverage.

8

Lastly, Licensee introduced a letter from Travelers, dated July 17, 2014, confirming that Travelers had issued an auto insurance policy for the period July 17, 2014, to January 17, 2015, and a financial responsibility card indicating that Licensee was covered for that six-month term. It is well-established that a financial responsibility card is insufficient to prove coverage on a particular date because a policyholder can retain a proof of insurance card even after the policy is cancelled or terminated. *Fell*, 925 A.2d at 239 (Pa. Cmwlth. 2007) (citing *Capone v. Department of Transportation, Bureau of Driver Licensing*, 875 A.2d 1228, 1231-32 (Pa. Cmwlth. 2005)). Thus, the trial court erred in ruling that Licensee's testimony, and the production of his financial responsibility card and payment records, proved that Licensee was insured on November 22, 2014, and continuously thereafter. Accordingly, we reverse the order of the trial court.

We next consider Licensee's argument that Travelers failed to provide him with proper notice that his coverage was cancelled. The trial court, relying on *Eckenrode v. Department of Transportation, Bureau of Driver Licensing*, 853 A.2d 1141 (Pa. Cmwlth. 2004), held that PennDOT lacked authority to impose a suspension.

In *Eckenrode*, the licensee argued that she rebutted the presumption that the cancellation of her insurance was effective because the insurer mailed the notice of cancellation to an incorrect address. The Court recognized that Section 1786(d)(5) of the MVFRL requires a licensee to bring any challenge to the termination of insurance before the Insurance Department. Section 2006 of Article XX of the Insurance Company Law of 1921 provides that no cancellation of automobile insurance is effective "unless the insurer delivers or mails to the named insured *at the address shown in the policy* a written notice of the cancellation …."

9

40 P.S. §991.2006 (emphasis added). The Court explained that if the cancellation notice was mailed to the address shown in the policy, then the cancellation was effective and the suspension was proper. If the mailing address did not match the address shown in the policy, then the insurer failed to adhere to Article XX of the Insurance Company Law and, consequently, failed to effect a cancellation, in which case PennDOT would have no basis to impose a suspension. Since the record was unclear as to which address the insurer mailed the notice of cancellation, the Court vacated the trial court's order and remanded for a determination of that factual issue.

Here, the trial court's reliance on *Eckenrode* is misplaced. While Licensee testified that he did not receive a notice of cancellation from Travelers, there was no evidence in the record about his address on the Travelers insurance policy or the address where the cancellation notice was mailed. In order for Licensee to prevail, he would need to show that the address on the insurance policy was not the address where the cancellation notice was mailed. Because Licensee contends that he did not receive notice from Travelers, there is no way to compare the address where the notice was mailed and Licensee's address on the policy.

This Court "has a history of returning cases to the court of common pleas under circumstances where an insured claims not to have received a cancellation notice and has failed to submit the matter for the Insurance Commissioner's review." *Roscioli v. Department of Transportation, Bureau of Motor Vehicles*, 37 A.3d 1278, 1282 (Pa. Cmwlth. 2012). This is such a case. Accordingly, we will remand to the trial court with instructions to hold the matter in abeyance to afford Licensee the opportunity to request review of his policy

10

cancellation by the Insurance Commissioner within 30 days of the date of this Order, and the Insurance Commissioner's review and disposition of the same.[6]

For the above-stated reasons, we vacate the trial court's order that the proposed vehicle registration suspension is void. We remand this matter with instructions to the trial court to hold the matter in abeyance to afford Licensee the opportunity to request review of his policy cancellation by the Insurance Commissioner within 30 days of the date of this Order, and the Insurance Commissioner's review and disposition of the same.

_____
MARY HANNAH LEAVITT, Judge

---

[6] If Licensee fails to file a written request with the Insurance Commissioner for review of the Traveler's cancellation within 30 days of this Order, PennDOT will have grounds to reactivate this case before the trial court.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Ducaji                              :
                                         :
              v.                         :    No. 790 C.D. 2015
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Motor Vehicles,                :
                  Appellant              :

# **O R D E R**

AND NOW, this 26th day of April, 2016, the order of the Court of Common Pleas of Luzerne County dated April 13, 2015, in the above-captioned matter is hereby VACATED and this matter is REMANDED for further proceedings in accordance with the attached opinion.

   Jurisdiction relinquished.

            _____
            MARY HANNAH LEAVITT, Judge